IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAINT-GOBAIN CALMAR, INC.,           :    CIVIL ACTION
                                     :
      Plaintiff,                     :    No. 02-CV-3626
                                     :
  v.                                 :
                                     :
NATIONAL PRODUCTS CORPORATION,       :
                                     :
      Defendant.                     :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                **November    , 2002**

Presently before the Court is the Motion to Dismiss and/or in the alternative, the Motion to Transfer of Defendant National Products Corporation ("NPC" or "Defendant"). NPC seeks to dismiss the Complaint for lack of venue under 28 U.S.C. § 1400(b) or in the alternative, transfer venue to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the action is transferred to the District of South Carolina.

### BACKGROUND

Saint-Gobain Calmar ("Calmar" or "Plaintiff") is a Delaware corporation with its principal place of business in City of Industry, California. Calmar develops, manufactures, and sells fluid dispensing products, such as trigger sprayers. Defendant is a South Carolina corporation with its sole place of business in Spartanburg, South Carolina. NPC manufactures and sells degeasers and other household cleaning products, which are sold

in bottles with trigger sprayer dispensers.

Three separate registered patents related to fluid dispensers are at issue in this patent infringement action. Plaintiff is the exclusive licensee with the right to bring suit for Patent No. Re33,235 for a liquid dispensing pump. Plaintiff is also the assignee and current owner of Patent No. 4,747,523 for a manually activated dispensing pump and Patent No. 4,706,888 for a multipurpose nozzle assembly. Plaintiff contends that NPC has been violating 35 U.S.C. § 271 by selling liquid cleaning products with infringing trigger sprayer dispensers.

Calmar brought this patent infringement action in the Eastern District of Pennsylvania. Defendant now moves to dismiss the case for improper venue, or in the alternative, to transfer the action to a more convenient venue.

## DISCUSSION

A.  Defendant's Motion to Dismss

Defendant argues that Plaintiff's Complaint should be dismissed because venue is improper in the Eastern District of Pennsylvania. Fed R. Civ. P. 12(b)(3); see 28 U.S.C. § 1406(a). In a patent infringement action, venue is proper if it is "brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In actions that involve a corporate defendant, § 1391(c) defines

residency for the purposes of venue: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." 28 U.S.C. § 1391(c).  In VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1580 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991), the Federal Circuit held that Congress amended § 1391(c) to apply its definition of residency for corporate defendants to § 1400(b).[1]  In which case, a corporate defendant "resides" wherever it is subject to personal jurisdiction.  Defendant NPC, however, contends that § 1400(b) exclusively controls venue in patent infringement actions.  While some circuits have continued to follow the Supreme Court's holding in Fourco Glass Co., the courts in this District have followed the reasoning laid out in VE Holding. See VP Intellectual Props., LLC v. Imtec Corp., No. 99-3136, 1999 U.S. Dist. LEXIS 19700 at *17-18 (E.D. Pa. Dec. 8, 1999); Amalia, Inc. v. Conopco, Inc., No. 94-4182, 1995 U.S. Dist. LEXIS 144 (E.D. Pa. Jan. 5, 1995).  Thus, venue is proper for a corporate defendant in a patent infringement action if it is subject to personal jurisdiction in that district.

It is uncontested that Defendant was subject to personal

---

[1] Traditionally, before Congress amended § 1391(c) in 1988, the Supreme Court held in Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222 (1957), that § 1400(b) was the exclusive venue provision for patent infringement cases.

jurisdiction in Pennsylvania in this case.  In addition, this Court finds that Defendant has sufficient contact with Pennsylvania to warrant specific personal jurisdiction because NPC sold its allegedly infringing products to distributors here. See VP Intellectual Props., 1999 U.S. Dist. LEXIS 19700, at *13.

Defendant further contends that applying the holding in VE Holding and supplementing § 1400(b)'s definition of "resides" with § 1391(c) would be a violation of its Equal Protection rights.  Doing so, NPC argues, would result in a more liberal venue provision for corporations in patent infringement cases, denying corporate defendants the equal protection of law. Although creative, Defendant's argument is unpersuasive. Defendant does not overcome the burden of showing that Congress' decision to amend § 1391(c) bears no rational basis to a legitimate governmental purpose. See Central State Univ. v. American Ass'n of Univ. Professors, Cent. State Univ. Chapter, 526 U.S. 124, 127-28 (1999)(holding that "a classification neither involving fundamental rights nor proceedings along suspect lines...cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose").

Therefore, since personal jurisdiction is established for Defendant and applying VE Holding to Defendant does not violate the Equal Protection Clause, this Court finds that venue in this

District is proper and the Motion to Dismiss for improper venue is denied.

B.    Defendant's Motion to Transfer

Even though this action can be brought in this District, Defendant, in the alternative, brings a motion to transfer venue to a more convenient venue.  A court may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought. 28 U.S.C. § 1404(a).  The party seeking transfer bears the burden of proving that transfer is proper and the Court has broad discretion in deciding whether to transfer an action. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).  In deciding a motion to transfer, the court must first determine whether the alternative forum is a proper venue[2] and then whether the balance of convenience clearly weighs in favor of a transfer. Nat'l Paintball Supply v. Cossio, 996 F. Supp. 459, 463 (E.D. Pa. 1998)

The purpose of allowing transfers under § 1404 is to

---

[2]    In deciding a motion to transfer, a court must first determine whether the alternative forum would be a proper venue. Since Plaintiff does not contest Defendant's assertion that venue is also proper in South Carolina, the threshold question of whether the suit could be brought in the alternative venue is not at issue.  Therefore, we now determine this motion based on the second part of the transfer analysis: a balancing of the interests of justice and the convenience of parties and witnesses. See Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001).

"prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998)(quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). In considering the motion to transfer, the court considers (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests to justice. Id.; see § 1404(a). The analysis for transfer is flexible and depends on the unique facts of each case. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). A court considers both private and public interests.[3] See Gulf Oil Corp.

---

[3]   In considering a motion to dismiss for forum non-conveniens, the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947), listed private and public factors that have provided guidance for courts in determining a motion to transfer. The private interests include: the forum preference of plaintiff, as manifested in the original choice; the forum preference of defendant; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum); the possibility of viewing the premises, if appropriate to the matter; and all other factors relating to the expeditious and efficient administration of the dispute. In addition, the public interests that the court must consider include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. See Gulf Oil Corp., 330 U.S. at 508-09; Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3rd Cir. 1995).

v. Gilbert, 330 U.S. 501, 508-09 (1947); Standard Knitting, Ltd. v. Outside Design, Inc., No. 00-2288, 2000 U.S. Dist. LEXIS 8633, at *9 (E.D. Pa. June 21, 2000).  The factors which a court considers in ruling on whether the balance of convenience weighs in favor of transfer are: (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (4) possibility of view of the premises, if appropriate; (5) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (6) factors of public interest, including the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation. Renzetti, Inc. v. D.H. Thompson, Inc., 1997 U.S. Dist. LEXIS 6121, at *7-8 (E.D. Pa. 1997).

**1. Plaintiff's Choice of Forum**

Motions to transfer are not to be liberally granted as the plaintiff's choice of venue is not to be lightly disturbed. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988); Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3rd Cir. 1995).  A plaintiff's choice of forum, however, is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based. Nat'l Paintball Supply, F. Supp. at

7

462.

The Court finds that the Eastern District of Pennsylvania is not Plaintiff's home forum, and therefore, Plaintiff's choice in forum is entitled to less deference. Calmar is incorporated in Delaware and has its principal place of business in California. This Court finds no indication that Pennsylvania should be considered Plaintiff's home forum.

Calmar argues, however, that its choice of forum is entitled to heightened deference because it conducts business through area distributors and its parent company, Saint-Gobain Corporation, has its principal place of business in Valley Forge, Pennsylvania. Plaintiff Calmar's attempts to bootstrap its connection to this forum are misguided for several reasons: (1) Saint-Gobain Corporation and Plaintiff are distinct legal entities; (2) Saint-Gobain Corporation is not a party to this action; and (3) Saint-Gobain Corporation does not have any proprietary interest in the patents at issue, which Calmar exclusively owns and enforces. See <u>Ricoh Co., Ltd. v. Honeywell, Inc.</u>, 817 F. Supp. 473, 481 (D.N.J. 1993)(rejecting bootstrapping attempts to strengthen position in forum choice through a parent-subsidiary relationship). We are unwilling to accord Plaintiff home forum deference simply because its parent corporation is located in this District, especially in light of the fact that Saint-Gobain Corporation (the parent) is not a party to the

action and has no interest in the patents at issue.

To the extent that Calmar's claim is based on the alleged infringing products being sold here, this District is one of many fora in which the claim can arise because NPC's products are sold nationally.  It appears to this Court that the only connections either party has to this District are the presence of local counsel and the allegedly infringing products are being sold here by third-party distributors that are not party to this action.  Thus, we find that Plaintiff's choice of forum is not entitled to the higher deference afforded to a home forum.

Furthermore, when the central facts of a lawsuit occur outside the forum state, plaintiff's choice of venue is accorded less deference. <u>Renzetti</u>, 1997 U.S. Dist. LEXIS 6121, at *9.  In patent infringement cases, the "preferred forum is that which is the center of gravity of the accused activity." <u>Id.</u>; see <u>S.C. Johnson & Son, Inc. v. Gillette Co.</u>, 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983).  The "center of gravity" for such a claim is in the district where the alleged infringement occurred.  In finding that "center of gravity," a district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." <u>Id.</u>; <u>S.C. Johnson</u>, 571 F. Supp. at 1188.  "Appropriate considerations include the location of a product's development, testing, research and production [and] the place where marketing and sales decisions

were made, rather than where limited sales activity has occurred." Ricoh Co., 817 F. Supp. at 482 n.17 (citations omitted).

In this case, it appears to this Court that the center of gravity of the alleged infringement occurred in Spartanburg, South Carolina, where Defendant maintains its principal and only place of business. Defendant contends that it purchases the offending trigger sprayers from third-party manufacturers and distributors. After assembly at its Spartanburg facility, NPC sells and ships its products, which utlize the allegedly infringing trigger sprayers, nationally (including Pennsylvania). Although there is sale activity in Pennsylvania through retail distributors, such as Dollar Stores, in the overall picture, these sales are not sufficient to establish Pennsylvania as the center of gravity of the allegedly infringing activity.[4] See Ricoh Co., 817 F. Supp. at 482-83. Rather, the central activities relevant to this patent infringement action - the purchase of trigger sprayers, their use in production, and the marketing and sale decisions of NPC products to retail distributors - occurred outside Pennsylvania. Therefore, we find

---

[4] Although no evidence has been presented as to what percentage of products sold is shipped to Pennsylvania as opposed to other states, it is clear that all allegedly offending NPC products are shipped from one location in South Carolina that houses NPC's offices, manufacturing and distributing facilities. We consider this to be the hub of activity centered around the trigger sprayers' production.

that the central operative facts of the alleged violations of 35 U.S.C. § 271 occurred at NPC's facility in South Carolina. The District Court of South Carolina would be a more convenient venue because it is closer to the hub of activity surrounding the production and sale of allegedly infringing trigger sprayers.

### 2. Access to Sources of Proof

The ease of access to sources of proof and evidence favors transfer to the District of South Carolina. In order to examine "'the relative ease of access to sources of proof,' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Ricoh Co., 817 F. Supp. at 483 (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S. Ct. 1945(1988)).

Defendant NPC intends to deny allegations of infringement and to plead affirmative defenses. Defendant Brief at 14. There is also a dispute as to whether Defendant NPC itself designs and manufactures the infringing trigger sprayers. Complaint, ¶ 17; Jones Aff., ¶ 22. All relevant documents relating to the alleged design, manufacture, marketing and sale of NPC's products with trigger sprayers are located at NPC's office in South Carolina. These documents include all files, correspondence, computer

records and purchase and sale records. Jones Aff., ¶ 6. In contrast, there are no documents or records relevant to the infringing product that appear to be located in Pennsylvania. Considering that there are no records or witnesses in Pennsylvania, the facts regarding the trigger sprayers and their production and sales will be more easily developed in South Carolina rather than Pennsylvania.

In addition, the majority of NPC's possible witnesses work or reside in South Carolina. NPC has provided a factually specific affidavit that lists key employee witnesses and third-party witnesses. Many of these witnesses, as well as third-party manufacturers and distributors, are primarily located in or near South Carolina. To the extent that these third-parties would be unwilling to participate in this action, the District Court in South Carolina would have the power to compel process.[5] In contrast, Plaintiff Calmar has failed to list a single specific party or non-party witness either located in Pennsylvania or who would be inconvenienced by a transfer to South Carolina. Plaintiff has already stated that it would not be inconvenienced by reviewing documents and deposing witnesses in South Carolina. Opposition Brief at 11. Plaintiff also states that it would be

---

[5] Defendant has identified at least three specific third-party witnesses from third-party manufacturers and distributors of trigger sprayers that are located within the district court's 100 mile radius.

willing to bring all proper documents and witnesses to the Eastern District of Pennsylvania.  Considering that Calmar, located in California, would have to bring its documents and witness to this District, Plaintiff would not be greatly inconvenienced by bringing its documents and witnesses to the District of South Carolina which is a comparable distance from California.  We find that since it would not be burdensome on Calmar to bring suit in South Carolina, there would be no shift of inconvenience from Defendant to Plaintiff.  "When a transfer motion would aid the movant and not disadvantage the opponent, transfer is appropriate." Ricoh Co., 817 F. Supp. at 485.  Therefore, the convenience of access to sources of proof and witnesses weighs in favor of transfer to South Carolina.

    **C. Public Interests**

    The Court finds no special public interest in having this case tried in Pennsylvania.  In evaluating public interest factors, the court considers the "locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 640 (3d Cir. 1989).  Even though NPC's products are ultimately sold to consumers in Pennsylvania, these sales are not the locus of the alleged culpable conduct.  Even if sales alone were a significant factor, NPC products are sold nationally and in South Carolina as well, so this factor

13

would not weigh in favor of Pennsylvania.  This Court finds that the local community with the strongest interest in the resolution of this dispute is located in South Carolina, where Defendant maintains its sole place of business.  There is no reason why this Court or jurors from this community should bear the burden of overseeing the resolution of this potentially lengthy and complex patent dispute between corporations from California and South Carolina. See Renzetti, 1997 U.S. Dist. LEXIS 6121, at *10-11.

In conclusion, this Court finds that NPC has shown that the balance of convenience favors transfer to South Carolina.

## CONCLUSION

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAINT-GOBAIN CALMAR, INC., | : | CIVIL ACTION |
| Plaintiff, | : | No. 02-CV-3626 |
| v. | : | |
| NATIONAL PRODUCTS CORPORATION, | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this         day of November, 2002, upon consideration of Defendant National Products Corporation's Motion to Dismiss Plaintiff's Complaint and/or in the alternative, its Motion to Transfer and Plaintiff's responses thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. the Motion to Dismiss is DENIED

2. the Motion to Transfer is GRANTED.

The Clerk of Court is hereby DIRECTED to TRANSFER the above-captioned case to the Clerk of Court for the United States District Court for the District of South Carolina.

BY THE COURT:


_____
J. CURTIS JOYNER, J.